UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JEANIE K.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    CIVIL NO. 1:21cv440 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.  The claimant has not engaged in substantial gainful activity since July 14, 2019, the application date. (20 CFR 416.971 *et seq*.)

2

2. The claimant has the following severe impairments: fibromyalgia; mild degenerative disc disease of the lumbar spine, status-post laminectomy; post-laminectomy syndrome; mild degenerative joint disease/osteoarthritis of the bilateral knees; osteoarthritis/bursitis of the right hip; degenerative joint disease of the left foot, status post left ankle stabilization, hardware removal and big toe fusion; peripheral neuropathy/ polyneuropathy; Raynaud's syndrome; migraines; obesity; asthma; chronic pain syndrome; major depressive disorder; generalized anxiety disorder; binge eating disorder; and attention deficit hyperactivity disorder (ADHD). (20 CFR 416.920(c).)

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 416.920(d), 416.925 and 416.926.)

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except that the claimant can occasionally climb ramps and/or stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently handle, finger, and feel with the bilateral upper extremities; she should avoid concentrated exposure to extreme heat, extreme cold, fumes, odors, dusts, gases, and poor ventilation, bright outdoor or flashing lights, and loud noise (as defined in the Dictionary of Occupational Titles (DOT) Code); she should avoid all exposure to wet, slippery or uneven surfaces, unguarded moving machinery, unprotected heights, and commercial driving; she can respond appropriately to occasional interactions with coworkers and supervisors, and she should avoid work activity requiring interactions with the general public.

5. The claimant is unable to perform any past relevant work. (20 CFR 416.965.)

6. The claimant was born on August 13, 1974 and was 44 years old, which is defined as a younger individual age 18-44, on the date the application was filed. The claimant subsequently changed age category to a younger individual age 45-49. (20 CFR 416.963.)

7. The claimant has at least a high school education. (20 CFR 416.964.)

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2.)

9. Considering the claimant's age, education, work experience, and residual

>      functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 416.969 and 416.969(a).)
>
> 10.    The claimant has not been under a disability, as defined in the Social Security Act, since July 14, 2019, the date the application was filed. (20 CFR 416.920(g).)

(Tr. 17-31).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on May 31, 2022. On September 14, 2022 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on October 11, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present

case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ failed to include limitations in the RFC for her need for an assistive device, need for a sit/stand option and elevation of feet, and obesity. With respect to the need for an assistive device, the ALJ noted that "At times, the claimant presents to examiners with her left ankle in a walking boot or with a knee scooter; however, these occasions appear to be shortly following an ankle sprain and then following surgery on the claimant's left ankle." (Tr. 24). Plaintiff contends that she wore a walking boot consistently, nearly every month, from October 2019 to March 2021. (Tr. 534, 544, 647, 659, 871, 946, 956, 966, 976, 996, 1005, 1015, 1121, 1130, 1139, 1159). Plaintiff also testified at the hearing that her doctor ordered a rollator walker for her, and that she uses it four to five days a week, including in her own home. (Tr. 51). However, the ALJ noted that "Although the claimant testified her treating provider prescribed the use of a walker for ambulation, no such prescription appears in the record; and the most recent physical exams in the record document normal range of motion throughout and a normal gait without use of a cane or similar assistive device." (See Ex. C16F/79-81, Ex. C17F/3-4, 18F/44-45). (Tr. 24). Plaintiff contends, however, that the ALJ cherry-picked the records and that recent records document unstable gait and impaired gait.

The record supports the ALJ's conclusion that Plaintiff did not require the use of an assistive device. As the ALJ noted, use of the walking boot was in connection with injury or surgery. Plaintiff asserts that she was observed using a walking boot as early as October 2019, which would correspond with a left foot sprain that she experienced in late 2019 (*see* Tr. 814). Further, Plaintiff did not testify that she was still using a walking boot, and podiatry notes supported that she was able to walk in shoes without restriction as early as October 2020 (Tr.

5

1212-16).

Plaintiff points out that she presented to appointments in a wheelchair or using a cane, but the record shows that Plaintiff was in a wheelchair because of the walking boot, which as discussed above was temporary, and the "multiple visits" Plaintiff relies on to show her use of a cane were all prior to the relevant time period (Tr. 308, 317, 330, 871). As the ALJ noted, more recent treatment notes observed her walking without any assistive device (*see, e.g.*, Tr. 1120, 1129, 1139, 1148).

With respect to Plaintiff's argument that she required an assistive device due to impaired gait and knee swelling, the record shows that Plaintiff was often observed with the ability to walk independently. Plaintiff presented to monthly pain management appointments able to walk without the use of an assistive device, and it was reasonable of the ALJ to rely on this evidence (Tr. 24, citing Tr. 1014, 1120, *see also* Tr. 1139, 1158).

While the evidence supports a difference of opinion on whether Plaintiff required an assistive device, the record does not conclusively demonstrate that Plaintiff required the use of an assistive device at work.  This Court will not reweigh the evidence but, rather, will defer to the ALJ's evaluation of the record.

With respect to Plaintiff's contention that she needed to sit and elevate her legs throughout the day due to swelling and pain, the ALJ stated "To alleviate leg pain and swelling, [Plaintiff] reports she elevates her legs as often as possible, up to one hour at a time and three to four times a day… , the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." (Tr. at 23). Plaintiff argues that the ALJ never explained why Plaintiff's testimony regarding the need to elevate her

6

legs is not consistent with the record, and did not recognize the many notes of swelling throughout the record.

However, as the Commissioner points out, Plaintiff relies on irrelevant evidence, citing to records showing swelling and foot elevation in August 2017, which is almost two years prior to her alleged onset date and the previous ALJ denial that was issued in March 2019 (Tr. 42). Additionally, Plaintiff presents the treatment notes regarding her ankle swelling out of context, as later notes from after her successful August 2020 surgery show significant improvement and no observations of swelling or recommendations for leg elevation (Tr. 1212-16). Plaintiff relies on physical exams showing restricted range of motion and tenderness in her neck and lower back. However, the expert reviewing physicians explicitly considered such evidence when they found her capable of light work (Tr. 82-83). Plaintiff also relies heavily on her subjective complaints here, but as the objective evidence did not support the severity of her subjective complaints the ALJ was not required to accept them. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("Although a claimant can establish the severity of his symptoms by his own testimony, his subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."). In the decision, the ALJ cited to physical exams demonstrating full strength and range of motion, intact sensation and reflexes, the ability to walk without a cane, and Plaintiff's own reports of the severity of her pain—these findings all supported an RFC assessment without a sit/stand option or leg elevation. Thus there is no basis for remand on this issue.

Plaintiff also contends that the ALJ failed to properly evaluate how Plaintiff's obesity affected her other ailments. As the Commissioner points out, however, there is no evidence in

7

this case that Plaintiff's obesity exacerbated her impairments. In the decision, the ALJ considered Plaintiff's obesity, noting that "[w]hile [obesity] is known to exacerbate other impairments . . . there is no sign it has done so to a substantial extent in this instance or to an extent greater than already accounted for in the discussion of related impairments" (Tr. 26). As Plaintiff has not pointed to any evidence to contradict the ALJ's conclusions, remand for further consideration of this impairment is not warranted. *Lovelace v. Barnhart*, 187 F. App'x 639, 643 (7th Cir. 2006) ("Lovelace does not specify how his obesity in combination with any of his impairments affected his ability to work.").

Next, Plaintiff argues that the ALJ erred in assessing Plaintiff's fibromyalgia. In a January 2019 rheumatology appointment the record stated that Plaintiff has fibromyalgia with chronic pain and fatigue. (Tr. 782). In a May 2019 rheumatology appointment the record states, "She continues to have significant pain and fatigue." (Tr.779). Notes further state, "She has multiple myofascial trigger points. She has tenderness at the left knee joint with painful complete flexion and extension. She had arthroscopic surgery of the left knee about a year ago. She also had cortisone and Gelsyn injection to the left knee with minimal improvement of the pain…She is doing about the same without any significant change in her symptoms." (Tr. 780). In September 2019, medical notes state that Plaintiff is "still symptomatic" for fibromyalgia and that she has chronic insomnia. (Tr. 811). Plaintiff has been diagnosed with chronic fatigue frequently throughout the record. (Tr. 287, 299, 310, 319, 332, 341, 504, 1015, 1024). She was positive for fatigue at all rheumatology appointments. (Tr. 776, 779, 782). Plaintiff has been going to United Interventional Pain Center since 2019 to manage her chronic pain. (Tr. 1077-1166).

Plaintiff's sleep issues are also noted throughout the record, "The level of sleep for the

8

patient has decreased due to difficulty in staying asleep." (Tr. 1153). "She states she isn't sleeping well." (Tr. 1218). "Increased Belsomra to 20mg PRN for sleep difficulty." (Tr. 1223). "Moderate problems" with sleeping was noted from Park Center in April of 2020, "Insomnia disorder, with non-sleep disorder mental comorbidity, persistent," was further noted. (Tr. 1310, 1357).

In the decision, the ALJ stated, "Regarding the claimant's fibromyalgia and chronic pain syndrome: The diagnostic and objective evidence supports some limitations, but not to the extent the claimant alleges. Physical exam findings from the relevant period occasionally document positive trigger points but do not reflect frequent positive trigger points or other common symptoms such as pain and fatigue." (Tr. 23). However, as discussed above, pain and fatigue are frequently noted throughout the record. The ALJ also stated:

> Notwithstanding the claimant's subjective complaints of pain and fatigue, the record does not reflect excessive signs of either. For example, treatment notes indicate the claimant frequently presented to examiners as alert, aware, and oriented, with good eye contact, an ability to communicate effectively, and in no acute distress….Similarly, the record does not document frequent instances of the claimant requiring redirection or that she was so unable to maintain attention or concentration due to pain or fatigue that she could not even engage in conversation."

(Tr. 23).

The Court agrees with Plaintiff that the ALJ is improperly used her own list of factors to determine the extent of Plaintiff's fibromyalgia limitations. "ALJ's may not make independent medical findings regarding whether certain activities are inconsistent with a particular medical diagnosis." *Blakes ex.rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). "ALJs are not qualified to evaluate medical records themselves but must rely on expert opinions." *Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018). The ALJ does not cite to any medical records to

9

explain why "alert, aware, oriented, good eye contact, need for redirection, and ability to communicate" contradict the fibromyalgia symptoms of pain, fatigue, and disturbed sleep. The ALJ improperly relied on what was not in evidence without acknowledging the pain and other symptoms noted in the record. Thus, remand is warranted on this issue.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: October 21, 2022.

                                                 s/ William C. Lee  
                                                 William C. Lee, Judge  
                                                 United States District Court